
FILED
APR 2 3 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No.: 1:12-CR-522 |
| v. | ) | |
| | ) | |
| ANDRIY DERKACH, et al. | ) | |
| | ) | |
| Defendants. | ) | |

AFFIDAVIT IN SUPPORT OF REQUEST
FOR EXTRADITION OF ANDRIY DERKACH

I, Alexander T.H. Nguyen, being duly sworn, state that:

1. I am a citizen of the United States of America and a resident of the Commonwealth of Virginia. I make this affidavit in support of the request of the United States of America to the Federal Republic of Germany for the extradition of Andriy Derkach, also known as --------, 216155193, Andy, ccchr, ccchkr, Derk, and m5 ("Derkach").

2. From 2007 to the present, I have worked for the U.S. Department of Justice as an Assistant United States Attorney, first in the Eastern District of Pennsylvania, and since 2012 in the Eastern District of Virginia. My duties are, among other things, to prosecute persons charged with criminal violations of the laws of the United States, including crimes originating under the federal laws prohibiting fraud, identity theft, and unauthorized accessing of computers. During my practice as an Assistant United States Attorney, I have become knowledgeable about the criminal laws and procedures of the United States.

3. As an Assistant United States Attorney for the Eastern District of Virginia, I am responsible for the preparation and prosecution of criminal cases. In the course of my duties, I

Affidavit in Support of Extradition – Page 1

have become familiar with the charges and evidence in the case of the United States v. Andriy Derkach, et al., criminal case number 1:12-CR-522.

## SUMMARY OF THE FACTS OF THE CASE

4.  This prosecution arose out of an investigation conducted by the United States Secret Service ("USSS"), which revealed that from as early as January 2009 through as late as June 2009, Derkach operated an Internet-based "dumps-checking" service whereby, for a fee, customers could check batches of stolen credit, charge, and debit card numbers (collectively, "payment card numbers") to confirm which accounts were still active and valid so that further fraudulent transactions and charges could be made to the payment cards belonging to victims. Derkach is a dual citizen of the Ukraine and Canada who controlled and operated the computer that offered the dumps-checking service (hereinafter, the "dumps-checking server"), along with its Internet-based interface.

5.  During the relevant timeframe, Derkach used the dumps-checking server to check and to store approximately 1,800,000 unique payment card numbers along with victim cardholders' personally identifying information and addresses. These payment card numbers belonged to cards branded with the Visa, MasterCard International ("MasterCard"), American Express Company ("American Express"), and Discover Bank credit card logos, and issued by other United States financial institutions and entities. To date, fraud losses attributable to the American Express payment card numbers checked and stored by the dumps-checking server have exceeded USD $12,000,000. The dumps-checking server contained over 580,000 MasterCard payment card numbers, and over 1,000,000 Visa payment card numbers. As more

fully described in the affidavit of USSS Special Agent Erik Rasmussen, attached as Exhibit 1, Derkach, working with others:

(a) sent electronic communications to computers in the Eastern District of Virginia for the purposes of checking the validity of stolen payment cards, and conspiring with another to carry out the dumps-checking service;

(b) used stolen authentication credentials to gain unauthorized access to computers, including a computer in the Eastern District of Virginia, for the purpose of checking the validity of stolen payment cards.

## THE CHARGES

6. On December 13, 2012, a federal grand jury sitting in the Eastern District of Virginia returned a 19-count criminal indictment charging Derkach with the following offenses:

| | |
|---|---|
| Count One: | conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, carrying a maximum penalty of thirty (30) years imprisonment; |
| Counts Two - Ten: | wire fraud, in violation of Title 18, United States Code, Section 1343; and aiding and abetting the commission of an offense, in violation of Title 18, United States Code, Section 2, carrying a maximum penalty of thirty (30) years imprisonment; |
| Count Eleven: | possession of fifteen or more unauthorized access devices, in violation of Title 18, United States Code, Section 1029(a)(3); and aiding and abetting the commission of an offense, in violation of Title 18, United States Code, Section 2, carrying a maximum penalty of ten (10) years imprisonment; |
| Counts Twelve – Eighteen: | accessing protected computer in furtherance of fraud, in violation of Title 18, United States Code, Section 1030(a)(4); and aiding and abetting the commission of an offense, in violation of Title 18, |

United States Code, Section 2, carrying a maximum penalty of five (5) years imprisonment; and

Count Nineteen: aggravated identity theft, in violation of Title 18, United States Code, Section 1028A; and aiding and abetting the commission of an offense, in violation of Title 18, United States Code, Section 2, carrying a maximum penalty of two (2) years imprisonment if Derkach is convicted on any of counts 1 or 2.

7. An indictment is a formal accusation or charging document issued by a grand jury, which is a part of the judicial branch of the U.S. Government. A grand jury consists of 16 to 23 citizens impaneled to review evidence of crimes presented to it by U.S. law enforcement authorities. Each member of the grand jury must review the evidence presented and determine whether there is sufficient evidence to believe that a crime has been committed and that it is likely that the accused person committed the crime. The grand jury may return an indictment charging the accused person with a crime when at least 12 grand jurors determine that it is likely that the accused person committed the crime. It is the practice in the U.S. District Court for the Eastern District of Virginia for the Clerk of Court to retain the originals of all indictments, and arrest warrants once the warrants have been executed. Therefore, I have obtained a true and accurate certified copy of this indictment from the Clerk of the Court, and attached it to this affidavit as Exhibit 2.

8. After an indictment is returned, a court may either issue a warrant for the arrest of the accused person, or issue a summons to appear. In this case, on December 13, 2012, Judith Lanham, Deputy Clerk of the U.S. District Court for the Eastern District of Virginia, signed a warrant for Derkach's arrest for the offenses charged in the indictment. I have obtained a true and accurate certified copy of that arrest warrant from the Clerk of Court, and attached it to this affidavit as Exhibit 3.

## APPLICABLE STATUTES

9. The statutes cited in the indictment and applicable to this case are Title 18, United States Code, Section 1349 (Conspiracy to Commit Wire Fraud); Title 18, United States Code, Section 1343 (Wire Fraud); Title 18, United States Code, Section 1029(a)(3) (Possession of Fifteen or More Unauthorized Access Devices); Title 18, United States Code, Section 1030(a)(4) (Accessing Protected Computer in Furtherance of Fraud); Title 18, United States Code, Section 1028A (Aggravated Identity Theft); and Title 18, United States Code, Section 2 (Aiding and Abetting the Commission of an Offense). A violation of these statutes is a felony under U.S. law. Each of the statutes was a duly enacted law of the United States at the time the offenses were committed, at the time the indictment was filed, and are in effect now. The applicable text of these statutes is attached as Exhibit 4.

### Conspiracy to Commit Wire Fraud (Count 1)

10. Count One charges Derkach with conspiracy to commit wire fraud. Under U.S. law, the agreement on which a conspiracy is based need not be expressed in writing or in words, but may be simply a tacit understanding by two or more persons to do something illegal. Conspirators enter into a partnership for a criminal purpose in which each member or participant becomes a partner or agent of every other member. A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the identities of all the other members of the conspiracy. If a person has an understanding of the unlawful nature of a plan and knowingly and willfully agrees to it, joining in the plan, he is guilty of conspiracy even though he did not participate before and may play only a minor part. A conspirator can be held criminally responsible for all reasonably foreseeable actions undertaken by other

conspirators in furtherance of the criminal partnership. Moreover, because of this partnership, statements made by a conspirator in the course of and while he is a member of the criminal conspiracy are admissible in evidence not only against that conspirator, but also against all other members of the conspiracy. This is so because, as stated earlier, a conspirator acts as an agent or representative of the other conspirators when he is acting in furtherance of their illegal scheme. Therefore, statements of conspirators made in furtherance of the conspiracy may be deemed to be the statements of all conspirators.

11. The crime of conspiracy is an independent offense, separate and distinct from the commission of any specific "substantive crimes." Consequently, a conspirator can be found guilty of the crime of conspiracy to commit an offense even where the substantive crime that was the purpose of the conspiracy ultimately was not carried out. The Congress of the United States has deemed it appropriate to make conspiracy, standing alone, a separate crime because collective criminal planning poses a greater threat to the public safety and welfare than individual conduct and increases the likelihood of success of a particular criminal venture.

12. Count One charges Derkach with committing a single conspiracy with the objective of committing wire fraud affecting a financial institution. Thus, in order to convict Derkach, at trial, of conspiracy to commit wire fraud (Count One), the United States must establish that:

> a. Derkach and at least one other person, directly or indirectly, reached an agreement to commit the substantive offense of wire fraud affecting a financial institution;

**Affidavit in Support of Extradition – Page 6**

b.  Derkach knowingly and voluntarily entered into the conspiracy with the objective to commit this substantive offense; and

c.  One of the members of the conspiracy committed an overt act in furtherance of the conspiracy.

## Wire Fraud (Counts Two - Ten)

13. In order to convict Derkach at trial of committing wire fraud affecting a financial institution (Counts Two - Ten); the United States must establish that:

a.  Derkach devised or intended to devise a scheme to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises that were material, such fraud affecting a financial institution; and

b.  For the purpose of executing the scheme, Derkach transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce any writings, signs, signals, pictures, or sounds.

## Possession of Fifteen or More Unauthorized Access Devices (Count Eleven)

14. In order to convict Derkach at trial of possessing fifteen or more unauthorized access devices (Count Eleven); the United States must establish that:

a.  Derkach possessed fifteen or more access devices;

b.  The access devices were unauthorized;

c.  The conduct affected interstate or foreign commerce; and

    d.  Derkach did so knowingly and with intent to defraud.

  15.  An "access device" is any card, code, account number, personal identification number, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

### Accessing Protected Computer in Furtherance of Fraud (Counts Twelve - Eighteen)

  16.  In order to convict Derkach at trial of accessing a protected computer in furtherance of fraud (Counts Twelve - Eighteen), the United States must establish that:

    a.  Derkach accessed a protected computer without authorization, or exceeded access to a protected computer;

    b.  By means of such conduct, Derkach furthered the intended fraud and obtained anything of value; and

    c.  Derkach did so knowingly and with intent to defraud.

### Aggravated Identity Theft (Count Nineteen)

  17.  In order to convict Derkach at trial of aggravated identity theft (Count Nineteen), the United States must establish that:

    a.  Derkach transferred, possessed, or used;

    b.  Without lawful authority;

    c.  A means of identification of another person;

d. Derkach did so knowingly and in relation to a felony enumerated in Section 1028A(c), which includes wire fraud and conspiracy to commit it; and

e. Derkach did so knowingly.

**Principals (Counts Two - Nineteen)**

18. Counts Two - Nineteen also charge Derkach with aiding and abetting the commission of those charged offenses. In order to convict Derkach at trial of aiding and abetting, the United States must establish that:

a. Derkach committed an offense against the United States or aided, abetted, counseled, commanded, induced or procured its commission; or

b. Derkach willfully caused an act to be done which if directly performed by him or another would have been an offense against the United States.

## STATUTE OF LIMITATIONS

19. The statute of limitations on prosecuting the offenses charged in Counts 1 through 10 under the indictment is Title 18, United States Code, Section 3293(2), which states: "No person shall be prosecuted, tried, or punished for a violation of or a conspiracy to violate... (2) section 1341 or 1343, if the offense affects a financial institution... unless the indictment is returned or the information is filed within 10 years after the commission of the offense." The statute of limitations on prosecuting the offenses charged in Counts 11 through 19 under the indictment is Title 18, United States Code, Section 3282(a), which states: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after

such offense shall have been committed." Since the alleged offenses occurred in 2009 and the applicable statute of limitations is five years and the indictment was filed on December 13, 2012, the offenses charged against Derkach were filed within the prescribed time.

## IDENTIFICATION AND LOCATION

20. Andriy Derkach, also known as --------, 216155193, Andy, ccchr, ccchrk, Derk, and m5, was born on April 28, 1973 in Ukraine, and is a citizen of Ukraine and Canada. Derkach is described as a Caucasian male, standing approximately 1.72 meters, and weighing approximately 82 kilograms. Derkach has dark brown hair and green or hazel eyes. Derkach has a Ukraine passport (number AH460010). Attached to Exhibit 1 is additional information on the identification of Derkach, including photographs of him (Tabs A and B).

21. Derkach was apprehended in Hamburg, Germany, on March 22, 2013, and continues to be detained in Hamburg, pursuant to a request for his provisional arrest, from the United States, pending extradition proceedings.

## SURRENDER OF PROPERTY

22. Pursuant to Article 25 of the Extradition Treaty between the United States and Germany, it is requested that any items, relevant to the charged offenses, found in Derkach's possession at the time of his arrest be delivered to the United States should Derkach's extradition be granted.

## CONCLUSION

23. The affidavit of Special Agent Erik Rasmussen contains further evidence against Derkach and is attached as Exhibit 1. Each of these affidavits was sworn to before a U.S.

Magistrate Judge legally authorized to administer an oath for this purpose. I have thoroughly reviewed these affidavits and the attachments to them, and attest that this evidence indicates that Derkach is guilty of the offenses charged in the indictment.

24. Should German authorities deciding this matter require further information in order to reach a decision on extradition, I request the opportunity to present supplemental materials prior to the rendering of a decision.

Alexander T.H. Nguyen
Assistant United States Attorney


Signed and sworn to before me this 23rd day of April 2013, at Alexandria, Virginia.

The Honorable Theresa Carroll Buchanan
United States Magistrate Judge

## List of Exhibits

1. Affidavit of Special Agent Erik Rasmussen of the USSS;

    Tab A.  U.S. Department of State Photograph of Andriy Derkach;

    Tab B.  Photograph of Andriy Derkach;

2. Indictment dated December 13, 2012;

3. Arrest Warrant dated December 13, 2012; and

4. Text of Applicable Statutes.

# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No.: 1:12-CR-522 |
| v. ) | |
| ) | |
| ANDRIY DERKACH, et al. ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF SPECIAL AGENT ERIK RASMUSSEN IN SUPPORT OF THE REQUEST FOR EXTRADITION OF ANDRIY DERKACH

I, Erik Rasmussen, being duly sworn, depose and state as follows:

1. I am a citizen of the United States, residing in the Commonwealth of Virginia.

2. I am a Special Agent employed by the United States Secret Service ("USSS"), which conducts investigations involving crimes against the United States. Through my eight-and-a-half years of experience, I have become knowledgeable about criminal violations of United States law, particularly regarding violations of Title 18 of the United States Code.

3. My duties as a Special Agent with the USSS include the investigation of Andriy Derkach ("Derkach"), criminal case number 1:12-CR-522. As the case agent in the investigation of Derkach, I am familiar with the facts of the case and the evidence supporting those facts.

4. During the course of the investigation, I obtained evidence by reviewing lawfully obtained servers used to facilitate criminal activity, reviewing communication "chat" logs between targets

1

of this investigation, reviewing records obtained from a variety of sources, to include online travel service Expedia, Google, MasterCard, and PayPal, and reviewing other documentary evidence. This affidavit is based on the evidence gathered in the investigation. The affidavit provides a summary of a portion of the evidence and does not describe all the evidence gathered in the investigation. Further, the indictment provides additional information concerning the scheme and artifice to defraud that is at the center of the charged conduct of Derkach.

## SUMMARY OF THE FACTS

5. Since at least 2003, the USSS has been investigating the activity of an individual using the online nickname "--------," aka "Eight Lines," and his operation of a "dumps-checking" service for criminals wishing to check the validity of stolen payment cards in an automated fashion. The investigation determined "Eight Lines" was a member of several high profile Russian-speaking forums devoted to payment card fraud and other online crime, to include CarderPlanet and Shadowcrew, previously investigated by the Secret Service. In 2012, "Eight Lines" was identified as Andriy Derkach.

6. In 2009, the USSS seized dozens of servers linked to a "bulletproof" hosting services provider operating in the Ukraine. Bulletproof hosting is the provision of Internet servers that can resist efforts by law enforcement to locate or disconnect them. One server analyzed by the USSS revealed a dumps-checking server that validated stolen payment card data through unauthorized access to the payment card processing system used by legitimate merchants and financial institutions. I determined through investigative analysis that the server was owned and operated by Derkach. Server logs revealed Derkach's server was utilized and accessed by dozens of members of high-profile Russian-speaking criminal forums. Additional analysis revealed that the server contained data corresponding to almost two million unique payment

2

cards. Preliminary financial analysis by credit card brands revealed actual fraud losses of over USD $12,000,000.

7. Derkach publicized the dumps-checking service in online advertisements on several Internet-based interfaces. Derkach would post on online forums frequented by individuals and groups engaged in large-scale identity theft and payment card related fraud messages indicating that he was willing to bulk-check the validity of hundreds or thousands of payment cards at a time. An active and valid payment card number belonging to a victim can be used to obtain money, goods and services, while a payment card number that has been reported lost, stolen, or compromised, has likely been blocked from further transactions, and subsequent attempts to use it may attract the attention of law enforcement.

8. Once customers used the Internet-based interfaces to upload payment card numbers to the dumps-checking service, Derkach caused these payment cards to be transmitted by wire to payment gateways located in the United States to query the status of the payment card numbers. To hide that the requests were actually coming from the dumps-checking server, Derkach paired the stolen payment card numbers uploaded by customers together with unique merchant IDs he had fraudulently obtained.

9. In December 2012, a grand jury in the Eastern District of Virginia indicted Derkach for violations of Title 18, United States Code, Sections 1349 (Conspiracy to Commit Wire Fraud), 1028A (Aggravated Identity Theft), 1029 (Access Device Fraud), 1030 (Computer Fraud) and 1343 (Wire Fraud). The indictment also charges Derkach with aiding and abetting the commission of the offenses other than the conspiracy, in violation of Title 18, United States

Code, Section 2 (Aiding and Abetting the Commission of an Offense). An arrest warrant for Derkach was subsequently issued.

## IDENTIFICATION

10. I have reviewed multiple records since 2011 related to Derkach and learned the following:

   a. Google records for an e-mail account linked to Derkach match information linked to Derkach's March 2013 hotel reservation in Hamburg, Germany;

   b. PayPal records for an e-mail account linked to Derkach listed transactional records for an individual listed in the records as "--------";

   c. Department of State Visa records for Derkach generated in 2006 listed an e-mail account which used a username similar to other email accounts linked to both Derkach and the nickname "--------";

   d. A MasterCard payment card issued to Derkach was referenced in both Google and PayPal records and was used to make the March 2013 hotel reservations in Hamburg, Germany.

11. On March 15, 2013, I reviewed data obtained via court order which confirmed that Derkach made a hotel reservation in Hamburg, Germany, from March 20, 2013 through April 1, 2013. On March 20, 2013, I again reviewed data obtained via court order which confirmed that an e-mail account operated by Derkach was accessed by an IP address in Hamburg, Germany. On March 21, 2013, German authorities confirmed Derkach did in fact check into the hotel referenced in the hotel reservation I discovered on March 15, 2013.

4

12. Andriy Derkach is a Ukrainian male standing approximately 172 centimeters tall with short black hair and brown eyes. The Department of State photograph of Derkach from the 2006 Visa records matched the appearance of the individual arrested by German authorities on March 22, 2013 pursuant to a request for his provisional arrest, from the United States, pending extradition proceedings.

13. On March 22, 2013, German authorities advised me that, while arresting Derkach, they had confirmed his identity. Furthermore, the female who was in the hotel room at the time of the arrest identified herself as Inna Derkach and she too confirmed that the individual under arrest was her husband Andriy Derkach. Based upon my investigation of this case, and personal observation of Derkach, I have confirmed that the attached photographs depict Andriy Derkach.

## CONCLUSION

17. This affidavit was sworn to before a U.S. Magistrate Judge of the U.S. District Court.

Erik Rasmussen
Special Agent
United States Secret Service

Signed and sworn to before me this 23rd day of April, 2013.

The Honorable Theresa Carroll Buchanan
United States Magistrate Judge